UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| QURIO HOLDINGS, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>DirecTV, and<br>DirecTV Holdings, LLC,<br><br>    Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Qurio Holdings, Inc. ("Qurio"), alleges the following for its complaint of patent infringement against DirecTV and DirecTV Holdings LLC (hereinafter DirecTV or "Defendants").

## NATURE OF THE ACTION

This is an action for patent infringement of (1) United States Patent No. 8,102,863 entitled "Highspeed WAN To Wireless LAN Gateway" ("the 863 Patent") and (2) United States Patent No. 7,787,904 entitled "Personal Area Network Having Media Player And Mobile Device Controlling The Same" ("the 904 Patent"), each owned by Plaintiff Qurio, under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and seeking damages and injunctive and other relief under 35 U.S.C. § 281, *et seq.*

**THE PARTIES**

1. Plaintiff Qurio is a Delaware corporation with a principal place of business at 20 Depot Street, Suite 2A, Peterborough, New Hampshire 03458-1453. Qurio is a technology company that develops technological solutions for network communications, telephony, and media delivery and distribution, including images, video and music.

2. On information and belief, Defendant DirecTV is a California-based corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2260 East Imperial Hwy., El Segundo, California 90245.

3. On information and belief, Defendant DirecTV Holdings LLC is a California-based corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2230 East Imperial Hwy., El Segundo, California 90245, and is a subsidiary of Defendant DirecTV.

**JURISDICTION AND VENUE**

4. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action concerns the infringement of United States patents.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Defendants have transacted business in the State of Illinois and Defendants have committed and continue to commit acts of patent infringement in Illinois, and Defendants have regular and established places of business in this Judicial District.

7. Upon information and belief, this Court has personal jurisdiction over each Defendant at least because each transacts substantial business in the State of Illinois, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein, and (ii) regularly doing or soliciting business in Illinois, engaging in other persistent courses of conduct, maintaining continuous and systematic contacts in Illinois, purposefully availing itself of the privileges of doing business in Illinois, and/or deriving substantial revenue from goods and services provided to individuals in Illinois.

## THE PATENTS-IN-SUIT

8. Plaintiff Qurio is and has been at all relevant times the owner by assignment of the 863 Patent, entitled "High-Speed WAN To Wireless WLAN Gateway," which the United States Patent and Trademark Office duly issued on January 24, 2012. A true and correct copy of the 863 Patent is attached hereto as Exhibit A.

9. The inventions of the 863 Patent are applicable to, among other things, providing communication between a high-speed wide-area network ("WAN") network and a lower speed Wireless Local Area Network ("WLAN").

10. Plaintiff Qurio is and has been at all relevant times the owner by assignment of the 904 Patent, entitled "Personal Area Network Having Media Player And Mobile Device Controlling The Same," which the United States Patent and Trademark Office duly issued on August 31, 2010. A true and correct copy of the 904 Patent is attached hereto as Exhibit B.

11. The inventions of the 904 Patent are applicable to, among other things, utilization of mobile devices to control content played by a plurality of media devices.

## DEFENDANTS' INFRINGING ACTIVITIES

12. Defendants distribute media content and provide video-on-demand and related services to their customers across the United States, by, among other things, transmitting content to their customers' televisions, digital video recorders ("DVRs"), set-top boxes ("STBs"), and wireless and other devices. Defendants purport to be the largest provider of Direct-to-Home, or "DTH," digital television services and the second largest provider in the multi-channel video programming distribution, or MVPD, industry in the United States. *See* Exhibit C (select portion of DirecTV 2013 Form 10-K/A (Amended Annual Report), at p. 2. Defendants purport to have over 20 million subscribers for their services in the United States. *See* Exhibit C (select portion of DirecTV 2013 Form 10-K/A (Amended Annual Report), at p. 2.

13. In filings with the United States Securities and Exchange Commission, Defendants describe their business activities as follows:

> DIRECTV, which we also refer to as the Company, we, or us, is a leading provider of digital television entertainment in the United States and Latin America. We operate two direct-to-home, or DTH, business units: DIRECTV U.S. and DIRECTV Latin America, which are differentiated by their geographic location and are engaged in acquiring, promoting, selling and distributing digital entertainment programming primarily via satellite to residential and commercial subscribers.
>
> \* \* \*
>
> *DIRECTV U.S.* DIRECTV Holdings LLC and its subsidiaries, which we refer to as DIRECTV U.S., is the largest provider of DTH digital television services and the second largest provider in the multi-channel video programming distribution, or MVPD, industry in the United States. As of December 31, 2013, DIRECTV U.S. had approximately 20.3 million subscribers.
>
> \* \* \*
>
> Through DIRECTV U.S., we provide approximately 20.3 million subscribers with access to hundreds of channels of digital-quality video entertainment and audio programming that we transmit directly to subscribers' homes or businesses via high-powered geosynchronous satellites. We also provide video-on-demand, or VOD, by "pushing" top-rated movies onto customers' digital video recorders, or DVRs, for instant viewing, as well as via broadband to our subscribers who have connected their set-top receiver to their broadband service. In addition, our subscribers have the ability to use directv.com or our mobile applications for smartphones and tablets to view authorized content, search program listings and schedule DVR recordings.

4

We believe we provide one of the most extensive collections of programming available in the MVPD industry, including over 195 national high-definition, or HD, television channels and two dedicated 3D channels. . . . As of December 31, 2013, we provided local channel coverage to markets covering over 99% of U.S. television households, 99% in HD.

\* \* \*

To subscribe to the DIRECTV® service, subscribers sign up for our service directly through us or our national retailers, independent satellite television retailers or dealers, or regional telephone companies, which we refer to as telcos. We or one of our home service providers or dealers generally install the receiving equipment. The receiving equipment, which we refer to as a DIRECTV® System, consists of a receiving satellite dish antenna, one or more digital set-top receivers, which are typically leased to the subscriber, and remote controls. After acquiring and installing a DIRECTV System, subscribers activate the DIRECTV service by contacting us and subscribing to one of our programming packages that are tailored to appeal to specific segments of existing and potential customers.

\* \* \*

[I]n 2013, we introduced the next generation DIRECTV Genie™, a premium high-definition whole-home DVR service with a terabyte hard drive that allows consumers to record five different high-definition programs simultaneously while viewing and controlling content from one DVR to four different locations in the house at the same time with the appropriate equipment. Our new DIRECTV Genie is our fastest DVR to date and comes equipped with a unique personalized recommendation engine, the ability to create a customizable sports portal for your favorite teams, interactive smart applications and built in Wi-Fi. . . . . In addition, we continue to evolve our platform to meet our subscribers' desire to view quality content where they want it most. For example, we expanded access to our live streaming content offerings on certain devices both inside and outside of the home and increased the programming available for subscribers to watch provided they are connected to the Internet.

\* \* \*

Our satellite-based service provides us with many advantages over ground-based cable television services. We have the ability to distribute hundreds of channels to millions of recipients nationwide with minimal incremental infrastructure cost per additional subscriber.

\* \* \*

The satellites that have been launched into these orbital slots have substantially increased our channel capacity, allowing us to provide one of the most extensive HD channel offerings currently available across the United States. In addition, we hold licenses to broadcast our services from 46 of 96 Ku-Band DBS frequencies spread over three orbital slots (101° WL, 110° WL and 119° WL).

\* \* \*

***Advance the Entertainment Experience Both Inside and Outside of the Home.*** We believe it is critical that we continue to extend our brand leadership as the premium pay-TV provider in the marketplace by providing the best and most

compelling video experience both inside and outside of the home. Therefore, we've created a flexible platform that leverages our hybrid satellite and cloud infrastructure with a broadband connection. We believe that our hybrid solution is the most efficient way to transport content to subscribers when and where they want it; through this integrated approach, we're able to intelligently optimize the use of storage in the home as well as in the cloud, while also providing a seamless service for consumers across screens and locations. To fulfill our goals, we have developed a robust product roadmap that leverages this infrastructure to advance the entertainment experience by (1) enhancing our Whole-Home DVR and time-shifting capabilities, (2) expanding DIRECTV Everywhere capabilities and (3) delivering a seamless best-in-class user interface that unifies search and discovery across multiple screens.

• *Enhance Whole-Home DVR and Time-Shifting Capabilities.* We believe that many consumers are looking for more features and functionality in their TV viewing, particularly in terms of place and time shifting. For this reason, in 2013 we raised the bar on the entertainment experience with the next generation DIRECTV Genie, a premium HD whole-home DVR service with a terabyte hard drive that allows consumers to record five different high-definition programs simultaneously without any conflicts. This advanced set-top receiver is our fastest HD-DVR to date and includes sophisticated, intuitive search and discovery functionality which also recommends personalized programming available to watch instantly as well as the ability to customize favorite sports teams. In addition, the DIRECTV Genie is a server with the ability to allow multiple screens within the home to connect to one central set-top receiver enabling the television viewer to watch live or recorded programs on up to eight televisions in the home without the need for an additional DVR receiver at each location. Utilizing RVU technology, now known as DIRECTV Ready, we have entered the "Bring Your Own Device" era, as consumers can now connect various Smart TVs that are RVU capable to the DIRECTV Genie without the need for a set-top receiver. In the future, we expect to further evolve the DIRECTV Genie and develop a hybrid gateway that broadly supports the vast ecosystem of Internet enabled devices in consumers' homes. The DIRECTV Genie will also enable an entertainment experience that includes four times the viewing resolution of HD on a 4K television with UHD content.

• *Connect Customer HD-DVRs to the Internet.* Connecting our customers' receivers to broadband service is strategically important because it greatly enhances the video experience while facilitating access of DIRECTV programming services on mobile devices. For example, a connected receiver provides our customers with the ability to (1) use their tablet or phone as a remote control for the big screen as well as enable contextual search and natural user interactions, such as voice to navigate the DIRECTV experience, (2) access over 12,000 additional movies and shows available through our service, as well as the ability to search and watch web-based videos on YouTube®, (3) stream live authorized DIRECTV programming on their Mac and PC computers, iPad®,

6

iPhone®, Android tablet, Android phone and Kindle inside their home, (4) engage interactive "TV Apps" that provide real-time information such as favorite sports teams, NFL Fantasy League integration, local traffic or weather reports as well as a connection that enables customers to interact with friends on their Twitter® or Facebook® account via their television or portable devices and (5) use the Pandora® audio service. In the future, we expect to expand the programming selection available through broadband connected receivers, with a focus on quality, as well as expand our time and place shifting capabilities with new services that enable our subscribers to restart a show from the beginning if they tune in late and allow subscribers to catch up on shows they missed the day after they air.

*Expand DIRECTV Everywhere capabilities.* Enhancing the accessibility of subscription TV content on any device inside and outside of the home is strategically important because it augments our customers' video experiences while meeting their desire to view quality content when and where they want it most. DIRECTV Everywhere offers our customers video streaming capabilities of authorized content, as well as the ability to search and record all of their favorite shows whenever they are connected to the Internet. Today, customers with premium subscriptions have the ability to stream content through directv.com as well as through offerings such as HBO GO®, MAX GO®, Showtime Anytime®, Starz Play® and Encore Play™. Subscribers can also access pay-per-view and VOD programming through their laptop, tablet, smartphone or computer. In 2013, we introduced GenieGo which enables subscribers with an HD-DVR and broadband connection to download and watch recorded shows on up to five different devices as well as remotely stream recorded content to an Internet enabled device over any Wi-Fi network. During 2013, we also implemented dynamic ad insertion for streamed On Demand content. In 2014, we expect to facilitate dynamic ad insertion among live content as well as viewership measurement capabilities to further enable monetization and secure a larger programming selection to expand video streaming content offerings across multiple screens and applications. We also expect to further optimize our DIRECTV Everywhere offerings with enhancements to the second screen experience, such as increased functionality, personalization, social integration and commerce capabilities. In the future, we plan to leverage our DIRECTV Everywhere platform to offer new viewing experiences, such as Over The Top, or OTT, and Subscription Video On Demand, or SVOD, service offerings.

• *Deliver a Seamless Best-in-Class User Interface that Unifies Search and Discovery Across Multiple Screens.* Providing our customers with a consistent user experience as they access their television content on any device inside or outside the home is strategically important to drive deeper customer engagement and satisfaction. Therefore in 2013, we extended our HD UI beyond the big screen to integrate the same crisp, easy-to-read HD UI format with graphical poster art and industry leading Smart Search capabilities across applications for mobile devices and tablets. In 2014, we plan to continue to unify the way our

7

> subscribers navigate content across all platforms of the DIRECTV Entertainment Experience. We are also investing in core technologies that will leverage universal profile sub-accounts within a household to provide more intuitive recommendations as well as enhance personalization across devices. In addition, we will leverage the cloud with our user interface to improve our insight into consumer behavior and increase our agility to further enhance our product and services offerings.

*See* Exhibit C (select portions of DirecTV 2013 Form 10-K/A (Amended Annual Report)), at pp. 1-7.

14. Upon information and belief, Defendants make, use, sell, lease, import and offer for sale in the United States products and services that allow users to transfer and display video and other content from Defendants' wide area network, including but not limited to Defendants' direct-to-home television broadcasting services, and DVR services, and Defendants advertise, for example, the following features of their DVR and Genie and Genie Mini products and services:

> **Our most advanced HD DVR system ever.**
> Everyone in your family can enjoy all of their favorite shows, live or recorded, in any room—from a single HD DVR. It's called Genie and it's our most advanced HD DVR system ever. Genie lets you record five shows at once, offers more HD recording capacity than cable, and gives you full HD DVR functionality on every TV in your home—even outside, when you connect a NEW Wireless Genie Mini.

*See* Exhibit D (copy of http://www.directv.com/technology/genie (accessed July 17, 2014)).

15. Defendants also offer a service that they refer to as GenieGo. Defendants describe this service as follows:

> **Watch anywhere—without an Internet connection.**
> GenieGO lets you download and watch shows recorded on your HD DVR on up to five different devices, so everyone in your family can enjoy their favorites anytime, anywhere—all at the same time. No Internet connection required to watch, so you can watch without interruption.
>
> **Auto-Download every episode of a TV series.**
>
> Your DIRECTV GenieGO can automatically prepare to sync a new episode of a series with your laptop, tablet, or phone, as soon as your HD DVR records it. Set

8

>Auto-Download Series to "ON." You must be within your home Internet network to download content to your device(s). **Learn how**

*See* Exhibit E (copy of http://www.directv.com/technology/geniego?ACM=false&lpos=Header:3 (accessed July 17, 2014)).

16. Defendants also make and provide to their customers software that customers download and is executed on customers' mobile electronic devices, including but not limited to products and services Defendants refer to, for example, as the GenieGO Apps or DirecTV Apps. Defendants describe some of these services as follows:

>DIRECTV goes anywhere you go.
>
>With the GenieGO™ device and app, DIRECTV lets you take your home HD DVR recordings with you on your iPhone and watch them anywhere without an Internet connection. Watch them on the plane, at the beach, on the subway, anywhere. Watch downloaded shows on up to 5 mobile devices simultaneously, so everyone in your family can enjoy their own recorded shows anytime, anywhere — all at the same time.
>
>With GenieGO, you can also instantly stream your shows from your HD DVR anywhere you have a Wi-Fi connection - no downloading required. So even if you forget to download, you can still watch your recorded shows when you're away from home.
>
>Requires GenieGO device (sold separately) and any HD DVR (Genie, model R22, HR20 or higher) connected to the Internet.
>
>\* \* \*
>
>DIRECTV Tablet App
>
>Watch live TV, the hottest shows and movies On Demand, your DVR playlist—it's all just a tap away. You can even set your DVR from anywhere, discover new shows, control your TV and more. The DIRECTV app turns your tablet into an entertainment powerhouse.

Exhibit F (copy of https://itunes.apple.com/us/app/directv-geniego/id448679509?mt=8 (accessed July 17, 2014)); and Exhibit G (copy of http://www.directv.com/technology/mobile_apps?ACM=false&lpos=Header:3 (accessed July 17, 2014).

9

## COUNT I: INFRINGEMENT OF THE 863 PATENT

17. Plaintiff incorporates paragraphs 1-16 herein by reference as if set forth here in full.

18. Defendants have been and are currently directly infringing, literally or under the doctrine of equivalents, one or more claims of the 863 Patent by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, without authority, products and services that distribute and display video content from their network on subscribers' devices. Without limitation, and by example only, Defendants directly infringe and continue to directly infringe one or more claims of the 863 Patent by making, selling, using and offering for sale at least their HD DVR, Genie, GenieGo, Apps, and other products and services, and by providing and operating the HD DVR, Genie, GenieGo, and Apps on their media distribution WAN, and transmitting to customers' devices over a WLAN.

19. By practicing the methods claimed in the 863 Patent and by making, selling, importing, offering for sale and/or using the aforementioned products that interconnect a WAN and a WLAN as claimed, Defendants have been and are now directly infringing under 35 U.S.C. § 271(a) one or more claims of the 863 Patent, either literally or under the doctrine of equivalents.

20. Defendants will continue to infringe the 863 Patent unless and until they are enjoined by this Court.

21. Defendants, by way of their infringing activities, have caused and continue to cause Qurio to suffer damages in an amount to be determined at trial. Plaintiff Qurio has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are

enjoined from its infringement of the 863 Patent, Plaintiff Qurio will continue to suffer irreparable harm.

22. As a result of Defendants' unlawful infringement of the 863 Patent, Plaintiff Qurio has suffered and will continue to suffer damage. Plaintiff Qurio is entitled to recover from Defendants the damages adequate to compensate for such infringement, which have yet to be determined.

## COUNT II:
## INFRINGEMENT OF THE 904 PATENT

23. Plaintiff incorporates paragraphs 1-16 herein by reference as if set forth here in full.

24. Defendants have been and are currently directly infringing, literally or under the doctrine of equivalents, one or more claims of the 904 Patent by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, without authority, products and services, and performing methods within the United States, that control digital content played by a plurality of media devices as claimed in the 904 Patent. Without limitation, and by example only, Defendants directly infringe and continue to directly infringe one or more claims of the 904 Patent by making, selling, using and/or offering for sale at least their HD DVR with GenieGo and Genie and Mobile Apps products and services.

25. By making, selling, importing, offering for sale and/or using the aforementioned products and services that control digital content played by a plurality of media devices as claimed, Defendants have been and are now infringing under 35 U.S.C. § 271(a) one or more claims of the 904 Patent, either literally or under the doctrine of equivalents.

26. Upon information and belief, upon knowledge of the 904 Patent (at least since the filing date of this Complaint or September 25, 2014, when notice was given to Defendants),

11

Defendants are inducing infringement of the 904 Patent by, among other things, knowingly and with intent, actively encouraging their customers, suppliers, users, agents and affiliates to make, use, sell and/or offer for sale Defendants' aforementioned products and services, and personal mobile devices for controlling digital content played by a plurality of media devices that constitutes infringement of one or more claims of the 904 Patent, with the knowledge and specific intent to encourage, direct and facilitate those infringing activities, and knowing that such activities infringe the 904 Patent, including through the creation and dissemination of software, promotional and marketing materials, instructional materials, product materials and technical materials. For example, Defendants provide users with Defendants' DVRs and Set-Top-Boxes and other media devices as well as their GenieGO and other Apps and instructions, which provide apparatus, direction and instructions on how to infringe the 904 Patent.

27. By inducing its customers', suppliers', users', agents' and affiliates' performance of the methods claimed and/or making and using the devices claimed in the 904 Patent, Defendants have been and are now infringing under 35 U.S.C. § 271(b) one or more claims of the 904 Patent, either literally or under the doctrine of equivalents.

28. Defendants will continue to infringe the 904 Patent unless and until they are enjoined by this Court.

29. Defendants, by way of their infringing activities, have caused and continue to cause Qurio to suffer damages in an amount to be determined at trial. Plaintiff Qurio has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from its infringement of the 904 Patent, Plaintiff Qurio will continue to suffer irreparable harm.

30. As a result of Defendants' unlawful infringement of the 904 Patent, Plaintiff Qurio has suffered and will continue to suffer damage. Plaintiff Qurio is entitled to recover from Defendants the damages adequate to compensate for such infringement, which have yet to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Qurio respectfully requests that this Court enter judgment in its favor as follows:

A. Holding that Defendants have infringed, literally and/or under the doctrine of equivalents, one or more of the claims of the Plaintiff's United States Patent no. 8,102,863;

B. Holding that Defendants have infringed, literally and/or under the doctrine of equivalents, one or more of the claims of the Plaintiff's United States Patent no. 7,787,904;

C. Permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents and all others acting in concert or privity with any of them from infringing, inducing the infringement of, or contributing to the infringement of any of Plaintiff's Patents;

D. Permanently enjoining the manufacture, use, offering for sale and/or sale of the products and services made and/or sold by Defendants that are found to infringe any of Plaintiff's Patents;

E. Awarding to Qurio the damages to which it is entitled under 35 U.S.C. § 284 for Defendants' past infringement and any continuing or future infringement up until the date Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

F. Declaring this to be an exceptional case and awarding Qurio's attorneys' fees under 35 U.S.C. § 285;

G. Awarding Qurio costs and expenses in this action;

H. Awarding Qurio pre- and post-judgment interest on its damages; and

I. Awarding Qurio such other and further relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

Qurio Holdings, Inc. under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any and all issues so triable by right.

Dated: September 26, 2014
        Chicago, Illinois

        McANDREWS, HELD, & MALLOY, LTD.

By: /s/ Kirk Vander Leest
Kirk Vander Leest
James P. Murphy
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Tel: (312) 775-8000
Fax: (312) 775-8100
Email: kvanderlest@mcandrews-ip.com
Email: jmurphy@mcandrews-ip.com

Attorneys for Plaintiff
QURIO HOLDINGS, INC.